# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| CHANDRA ELAINE LEWIS, | Case No. 1:17-cv-538 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Chandra E. Lewis filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

In July 2014, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning on February 12, 2001, based upon a combination of multiple physical impairments and mental impairments relating to depression. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ.

On April 14, 2016, she appeared with counsel and gave testimony before ALJ Mark Hockensmith; a vocational expert also testified. (Tr. 40-68). Plaintiff testified that

1

she had no recent relevant work history and her date last insured ("DLI"), for DIB purposes, was June 30, 2005. Because the earliest medical evidence submitted into the record post-dated Plaintiff's DLI, her attorney acknowledged that "realistically, ….this is a Title XVI [SSI] only claim and likely a claim where the claimant's 50th birthday is significant." (Tr. 45). On April 29, 2016, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 20-34).

At 36 years old on her alleged onset date, Plaintiff was still a "younger individual." However, by the time of the ALJ's 2016 decision, she was "closely approaching advanced age." (Tr. 33). She has at least a high school education, and testified that she lives with her son, daughter-in-law and two grandchildren, and is separated from her husband.

The ALJ determined that Plaintiff has severe impairments of congestive heart failure, osteoarthritis, rheumatoid arthritis, residual effects of a right hip dislocation, chronic obstructive pulmonary disease (COPD), degenerative disc disease, and depression. (Tr. 22). Plaintiff does not dispute the ALJ's determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 23).

The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of light work, subject to the following limitations:

> (1) no climbing of ladders, ropes, or scaffolds; (2) frequent climbing of ramps and/or stairs; (3) frequent stooping and kneeling; (4) occasional crouching; (5) no crawling; (6) avoiding concentrated exposure to extreme heat, cold, and humidity; (7) avoiding concentrated exposure to fumes, dusts, gases, odors, and poorly ventilated areas; (8) no work at unprotected heights; (9) no work with dangerous machinery; (10) frequent reaching, handling, and fingering bilaterally; (11) limited to simple, routine

tasks; (12) in a static work environment with few changes in routine; (13) no fast-paced work or strict production quotas; (14) no contact with the public; (15) occasional contact with coworkers and supervisors; and (16) no tandem or collaborative work.

(Tr. 25). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform 2.5 million jobs, equivalent to a significant number of jobs in the national economy, including the representative jobs of mail clerk, warehouse checker, and marker. (Tr. 34). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred by failing to include in her RFC a limitation that she is required to elevate her legs above her heart at least "occasionally," due to swelling in her legs.[1] The vocational expert testified that if an individual were required to elevate their legs for a "significant" portion of the work day, the individual would be precluded from all work.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

---

[1] By presenting only this single claim of error, Plaintiff has waived any other claims.

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts

to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's RFC and Her Asserted Need to Elevate Her Legs**

The vocational expert testified that an individual with the RFC determined by the ALJ in this case can still perform a significant number of jobs in the national economy. However, Plaintiff argues that the ALJ erred by failing to include a physical limitation that she is required to elevate her legs for a significant portion of each day. At the hearing, Plaintiff's counsel posed the following additional hypothetical question to the vocational expert:

> Q: [I]f an individual had to elevate their feet above heart level for you know a significant portion of the workday I would say occasionally, what impact would that have on the universe of full-time work?

> A: It would eliminate the opportunity for full-time work.

(Tr. 66). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question," as long as the hypothetical question accurately portrays the actual limitations of the Plaintiff. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The sole question for this Court is whether substantial evidence supports the ALJ's determination of Plaintiff's RFC. More specifically, the Court is required to determine whether substantial evidence

supports the ALJ's failure to include the additional limitation proposed by Plaintiff - that she is required to elevate her feet above heart level for "a significant portion of the workday."[2]

At the evidentiary hearing, Plaintiff's counsel noted records reflecting "rheumatoid arthritis with intermittent swelling to the claimant's hands, … a right hip fracture and a dislocation [from a 2013 car accident and] …degenerative disc disease in the cervical spine," a 2014 report of "bilateral lower extremity edema," and a 2009 x-ray reflecting "osteoarthritis in the left knee." (Tr. 46). Plaintiff herself testified that she is primarily unable to work due to her physical impairments of swelling in her hands from rheumatoid arthritis and symptoms (primarily fatigue and breathing difficulties) from her COPD. (Tr. 49-50; *see also* Tr. 57-58). Although she had been prescribed medications in the past for arthritis, she testified she did not take those medications. (Tr. 51). She testified that she is bothered by her left knee, and "think[s]" she needs a knee replacement because it "gives out" on her if she walks longer than a half hour. (Tr. 52). Last, she testified to pain in her right hip, which causes low back pain. (Tr. 52, 60).

With respect to swelling, Plaintiff mostly testified about swelling in her hands from rheumatoid arthritis, as opposed to any swelling in her legs (Tr. 54-55; *see also* Tr. 26, noting that Plaintiff "testified that she had been unable to work since 2001 because of swelling and pain in her hands"). Nevertheless, when more specifically questioned by her attorney, Plaintiff testified that she elevates her left knee or leg "[a]bout every other

---

[2]The grammatical structure of the question posed to the vocational expert makes the query somewhat ambiguous. However, the undersigned assumes that counsel intended, and that the vocational expert understood, the question to be limiting Plaintiff to "occasional" elevation of her legs on a daily basis, as opposed to elevation for a "significant portion" of "occasional" workdays. Even if the intention was to elevate for a "significant portion" of "occasional" workdays, the analysis would be unchanged.

6

day, it starts swelling up," and that the swelling increases when she stands and walks. (Tr. 61, emphasis added).

The ALJ briefly referenced Plaintiff's testimony by noting her report of "pain in her left knee" as well as in her right hip and low back, resulting in "swelling in her legs every other week, which she relieved with elevation." (Tr. 26, emphasis added). The ALJ's reference to swelling every other "week" contrasts with Plaintiff's actual testimony that her swelling occurred "about every other day." The ALJ's statement also erroneously refers to the elevation of both legs. Plaintiff did not testify about *both* feet or legs, but testified only about a need to elevate her left knee. (Tr. 52). In any event, Plaintiff maintains that the misstatement of the ALJ regarding the frequency of her knee/leg swelling constitutes reversible error. However, based on the totality of the record presented, the undersigned concludes that the ALJ's misstatement(s) of the referenced testimony constitute no more than harmless error.

In addition to the reference on which Plaintiff focuses, the ALJ made several findings that are relevant to Plaintiff's claim that she needs to elevate her legs during the workday due to swelling. First, at Step 3, the ALJ considered Plaintiff's osteoarthritis and rheumatoid arthritis but noted that "the record does not document the requisite inflammation" or other elements that would satisfy any Listing. (Tr. 23).

Second, and more significantly, the ALJ made an adverse credibility determination, which Plaintiff has not appealed. (Tr. 26; *see also* Tr. 32, "[T[he claimant's subjective symptoms are not consistent with the evidence to the extent that they purport to describe a condition of disability"). As support for the adverse credibility determination, the ALJ focused on the paucity of medical records to support her claims of disabling impairments. (Tr. 29). Many of Plaintiff's records undermined her claims,

with only mild objective findings and …good resolution of symptoms with treatment." (Tr. 29; *see also generally*, Tr. 26-32). In fact, Plaintiff failed to obtain any significant treatment at all for many of her allegedly disabling symptoms during the relevant period.³ (*See, e.g.*, Tr. 27 (no treatment for back and neck); Tr. 28 (no treatment related to her right hip after September 2013); *id.* (ER records contradicting Plaintiff's account of going to the emergency room 3-4 times for hand swelling); Tr. 30 (no treatment for depression diagnosed during consultative exam); *id.* (ER and treatment records of accidental heroin overdose contrasted with hearing testimony that overdose was suicide attempt); Tr. 31 (inconsistent statements regarding polysubstance abuse)). The ALJ also noted Plaintiff's poor work history, and failure to seek any significant treatment for any alleged symptoms until six years after her alleged disability onset date. (Tr. 31). Last, he noted that her presentation and demeanor at the hearing were inconsistent with her claims of disabling symptoms. (*Id.*)

The ALJ's adverse credibility assessment included specific discussion of records relating to Plaintiff's infrequent, sporadic, and poorly supported complaints of knee or leg issues. (*See* e.g., Tr. 28 (citing September 2014 complaint of left knee pain with intermittent swelling and no instability); Tr. 29 (citing October 2014 consultative exam reflecting essentially "normal" examination of knees (with no reference to effusion, warmth, or swelling) and only "slightly diminished flexion and diminished extension of the left," with "bony enlargement of the left knee"). As reflected by the ALJ's credibility assessment, Plaintiff's alleged near-constant leg swelling before this Court is not supported by any clinical or objective records. Instead, the records – at most –

---

³Plaintiff explained her failure to seek treatment as based upon her alleged fear of doctors and of taking medication. However, the ALJ found "no indication of such fears in the record." (Tr. 29).

document infrequent complaints of left knee pain due to osteoarthritis changes. (*See* Tr. 28, noting 2007 record of moderate osteoarthritic changes and 2009 x-ray evidence of the same).

The limitation that Plaintiff proposes is also unsupported by her own testimony. Despite testifying in response to counsel's inquiry that she elevates her left knee due to swelling "about" every other day, she did not indicate any particular amount of time that she elevates her leg on those occasions. She testified more generally that she spends most of each day "sitting on the couch looking at TV," without reference to elevating her leg. (Tr. 61). Plaintiff's own self-serving testimony that she elevates her left knee due to swelling "about" every other day, for an unspecified amount of time, provides no support for the extreme RFC limitation that she proposes – even if Plaintiff's subjective complaints had been determined to be credible, which they were not.

Plaintiff's argument that the ALJ should have included a limitation for elevating both legs on a consistent basis also is wholly unsupported by the medical opinion evidence. In a larger context, it is worth noting that no treating or consulting physician has ever opined that Plaintiff was disabled. Of the medical opinions offered by two agency physicians who conducted records reviews and one examining consultant, none of them determined any limitation that would support Plaintiff's assertion that she needs to elevate her legs for any period of time during the workday. *Compare Stumpf v. Com'r of Soc. Sec.*, Case No. 1:16-cv-991, 2018 WL 718611 (S.D. Ohio Feb. 6, 2018), adopted at 2018 WL 1175294 (affirming ALJ's rejection of treating physician's RFC opinion that plaintiff must elevate both legs at least two hours per day, finding substantial support for ALJ's RFC determination that plaintiff could elevate her legs during regular breaks).

As stated, Plaintiff's own testimony and the medical evidence suggested (at most) that Plaintiff had greater difficulties with hand swelling due to her rheumatoid arthritis than with left knee swelling based upon her osteoarthritis. The ALJ gave Plaintiff the benefit of the doubt in that regard. Thus, based upon the opinion of Dr. Manos regarding Plaintiff's rheumatoid arthritis and more significant subjective complaints of hand pain and swelling in the record, the ALJ included limitations for reaching, handling, and fingering. (Tr. 31-32).

Scouring the record for support for the far more extreme limitations she seeks concerning her leg(s), Plaintiff points to a single medical record from an ER visit in which a physician advised leg elevation to reduce swelling. Close examination of that record, however, confirms that it provides no support for any permanent functional or work-related limitation. On July 2, 2010, Plaintiff presented to the Emergency Room complaining of "chest heaviness, bilat[eral] lower ext[remity] edema, dizziness & feeling disoriented x 2 days." She also reported a history of congestive heart failure. (Tr. 437). Despite Plaintiff's reported complaint of "bilateral" leg swelling on presentation to the ER, the narrative note describes "apparent left leg swelling which is an acute on chronic, recurrent issue." (Tr. 439). In contrast to Plaintiff's subjective report of swelling, a review of symptoms found "no joint swelling; no warmth or redness; no restriction in range of motion." (Tr. 439). Similarly, on physical exam, she was noted to be in no acute distress, with her extremities noted to have "[n]o pedal edema. No tenderness," and no more than a "slight suggestion of palpable warmth, and a reddish color to the left leg compared to the right." (Tr. 441). Based upon Plaintiff's reported history, she was diagnosed with "nonspecific left leg swelling," which "apparently is a chronic, recurring phenomenon." (*Id.*) The attending physician included as a final

impression a non-definitive diagnosis of "? Recurring lymphedema," and provided a prescription of 15 tablets of a diuretic (LASIX) to be used only with leg swelling. (*Id.*; *see also* Tr. 443). Plaintiff was discharged from the ER with instructions to return if she experienced "high fever, increasing shortness of breath, suffocating chest pressure, uncontrolled vomiting or escalating uncontrolled pain." In addition, her discharge instructions advised work release "if applicable for one or two days," and to elevate her (reportedly) swollen "leg …as much as possible." (Tr. 442). She was also advised to obtain an outpatient mammogram based upon a report of painful lumps in her breasts. (*Id.*)

The undersigned finds the RFC determined by the ALJ - without the additional limitation of bilateral leg elevation during the workday – to be well-supported by substantial evidence. There is no clinical or diagnostic evidence to corroborate Plaintiff's rare subjective complaints of bilateral leg swelling, nor is there any record evidence or medical opinion evidence that would support the inclusion of a limitation requiring her to elevate her legs for any portion of the workday at all, much less a "significant" portion. At most, the single July 2010 ER record reflecting some slight warmth and/or possible swelling (per Plaintiff's report) in her left leg supports temporary restrictions, by suggesting a work release "if applicable" for 1-2 days, with treatment through a short course of medication and elevation of Plaintiff's left leg *at that time*. By contrast, in an ER record three years later, in September 2013, Plaintiff was found to have full range of motion in both lower extremities. (Tr. 356-357, 389-94).[4]

---

[4] Although the ALJ cited to other pages in this record, including pages relating to the findings of moderate osteoarthritic changes in the left knee, (Tr. 28, citing Tr. 467-68), he did not specifically cite to these pages.

In addition to his reference to the 2010 ER record, the ALJ cited the only other record pertaining to leg pain, dated September 2014, in which Plaintiff complained to her primary care physician of intermittent left knee swelling, including a statement that her knee "had been hurting for a while." However, the treating physician noted she had never tried physical therapy and reported no instability. On examination, she reported tenderness and only mild pain with motion. (Tr. 28, citing Tr. 666-67). No swelling was documented during the clinical exam. A month later at her consultative exam in October 2014, Plaintiff did not report any swelling or leg pain, instead reporting she could not work due to shortness of breath relating to her COPD. (Tr. 511). No swelling was found at that time either, and the examination of her knees was essentially normal.

Plaintiff complains that the ALJ did not specifically discuss his reasons for rejecting the 2010 ER record – the only record that contains any support for elevating her left leg at all. However, as discussed, the referenced record does not support the limitation that Plaintiff advocates. In addition, an ALJ is not required to discuss every portion of every medical record, so long as the record has been sufficiently considered as a whole. *See Boseley v. Com'r of Soc. Sec.*, 397 Fed. Appx. 195, 1999 (6th Cir. 2010). On the record presented, there is virtually no evidence to support the extreme functional limitation that Plaintiff proposes. See *Sorrell v. Com'r of Soc. Sec.*, 656 Fed. Appx. 162, 170 (6th Cir. 2016) ("the ALJ was not required to include a limitation for elevating legs in the RFC because, although there were some treatment records that mentioned leg elevation as a treatment for edema, no physician indicated that Sorrell's edema caused work-related limitations, and no medical expert opined that Sorrell would need to elevate her feet to waist level during the workday or even every day"); *see also Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (diagnosis of impairment not

enough, claimant must establish not only the existence of a medically-diagnosed impairment, she must also prove its severity and functional impact).

The undersigned has carefully examined the entirety of the administrative record and finds no substantial support for Plaintiff's assertion that she needs to elevate both legs even "occasionally" during the workday. By contrast, the RFC determined by the ALJ in this case is substantially supported. As indicated in the above summary of the sequential analysis, it is the Plaintiff who retains the ultimate burden of proving that she was disabled in this case. *See Born v. Sec'y of Health and Human Servs*., 923 F.2d 1168, 1173 (6th Cir. 1990).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CHANDRA ELAINE LEWIS, | Case No. 1:17-cv-538 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

### NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).